IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| THADDEUS VASKAS | : | NO. 12-128 |

MEMORANDUM

Bartle, J.                                             August 29, 2012

        Defendant Thaddeus Vaskas ("Vaskas") has been indicted
for possession and receipt of child pornography.  See 18 U.S.C.
§§ 2252(a)(2), (a)(4)(B), (b)(1).  Before the court is the motion
of Vaskas to suppress statements and physical evidence allegedly
obtained in violation of the Fourth Amendment to the United
States Constitution.  He has also filed a motion to suppress
statements allegedly obtained in violation of the Fifth
Amendment.

        The court held an evidentiary hearing on the motions.
The government presented the testimony of United States
Department of Homeland Security Special Agents William Schuck,
James Smith, and Kathleen Timney.  The government also introduced
several exhibits, including the search warrant which led to the
arrest of Vaskas.

I.

        The evidence establishes that, on October 29, 2007,
Agent Timney applied for a warrant to search Vaskas's residence.
The warrant was approved by United States Magistrate Judge Thomas

J. Rueter that same day.  In her affidavit in support of the
warrant, Agent Timney set forth her experience:

> I have been employed as a Special Agent for
> ICE (and its predecessors, the United States
> Immigration and Customs Enforcement, and the
> United States Custom Service) for
> approximately thirteen years, and am
> currently assigned to the Philadelphia Office
> of Investigations....  I have received
> training in the area of child pornography and
> child exploitation, and have had the
> opportunity to observe and review numerous
> examples of child pornography (as defined in
> 18 U.S.C. § 2256) in all forms of media
> including computer media.  I have also
> participated in the execution of numerous
> search warrants, some of which involved child
> exploitation and/or child pornography
> offenses.

Agent Timney also described an investigation into a commercial
website labeled illegal.CP which offers thousands of images and
videos of child pornography through paid subscriptions.  Through
this investigation, government agents identified the internet
protocol ("IP") addresses[1] and personal information of
individuals who purchased these subscriptions.  According to the
affidavit, Vaskas purchased such a subscription to the website
for $79.99 on or about March 26, 2006, some nineteen months prior
to the application for the search warrant.  The address, email
account, and credit card used to purchase the subscription
allegedly matched those belonging to Vaskas.  The affidavit is
silent as to whether the IP address of Vaskas's computer actually
accessed the website.  The affidavit also referenced the 2000

---

1.  An IP address is a unique series of numbers which identifies
every computer on the internet.

federal felony conviction of Vaskas for possession of child pornography.

Agent Timney included information regarding child pornography and the internet, which has "revolutionized" the way child pornography is created and obtained.  She explained that computer files containing child pornography "can be recovered months or even years after they have been downloaded ... or viewed via the Internet" and that "[e]ven when such files have been deleted, they may be recoverable months or years later using readily-available forensic tools."  She further stated in her affidavit that individuals who subscribe to websites such as illegal.CP are often "child pornography collectors" who retain child pornography images for years and rarely destroy their collection, which is "valued highly."

On November 1, 2007, at approximately 8:55 a.m., federal agents executed the search warrant on the residence in in Bethlehem, Pennsylvania that Vaskas shared with his wife and her teenage son.  Upon entering the property, agents informed Vaskas that he was not under arrest but provided him with Miranda warnings.  See Miranda v. Arizona, 384 U.S. 436 (1966).  Vaskas replied that he would like to speak with an attorney. Nonetheless, Vaskas thereafter made several statements to agents during the course of the search.  In particular, Vaskas asked the agents if he could inspect the computer immediately and stated that he used the computer for school.  He also informed agents that there was nothing on the computer and that he viewed

-3-

pornographic images of adult women only.  Vaskas admitted that he
had viewed a file on his computer called "Little Lupe/Lil Lupe,"
which he described as a pornographic video of a twenty-year-old
woman.

Agents seized from Vaskas a laptop, a homemade desktop
computer, several compact discs, DVDs, a memory card, a thumb
drive, a floppy disk, a digital camera, VHCS tapes, and
miscellaneous documents.  According to the government, forensic
examination of the laptop revealed hundreds of images of child
pornography in temporary internet folders and in unallocated
space on the hard drive.  In addition, several images and videos
of child pornography were allegedly uncovered in folders
associated with Morpheus, a peer-to-peer file sharing program.

It was not until March 29, 2012, some four years and
seven months after the search warrant was executed, that Vaskas
was arrested at his mother's home in Tunkhannock, Pennsylvania
pursuant to the pending federal indictment.  After receiving
Miranda warnings and being brought to the nearby local police
station, Vaskas informed agents that he wished to remain silent
and to contact an attorney.  Government agents then explained to
Vaskas that he had been arrested because of child pornography
uncovered from his computer, which was seized in the November 1,
2007 search.  In response, Vaskas allegedly asked the agents
"what took them so long."  Vaskas also told agents that there was
nothing on his computer and that he could not be away from his
son.  Later that day, during the 2.5 to 3 hour-long car ride with

two federal agents from Tunkhannock to Philadelphia, Vaskas
revealed that he had looked at websites involving teenage
children and had paid $20.  He further stated to the agents that
he could understand how persons charged with a child pornography
offense would blow their brains out and asked if agents knew the
number of people that had done so.  He repeated several times
that although he did not plan to harm himself, he could
understand why an individual charged with the offenses at issue
would choose to do so.

                              II.

        The Fourth Amendment provides that, "the right of the
people to be secure in their persons, houses, papers and effects,
against unreasonable searches and seizures shall not be
violated."  U.S. Const. amend. IV.  With the exception of certain
limited situations not relevant here, police must secure a
warrant supported by probable cause and approved by a neutral and
disinterested magistrate before conducting the search of a home.
E.g., Kyllo v. United States, 533 U.S. 27, 31 (2001).

        Probable cause exists "when there is a fair probability
that contraband or evidence of a crime will be found in a
particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983);
see also United States v. Jones, 994 F.2d 1051, 1056 (3d Cir.
1993).  Probable cause may be inferred based on "'the type of
crime, the nature of the items sought, the suspect's opportunity
for concealment and normal inferences about where a criminal
might hide stolen property.'"  Jones, 994 F.2d at 1056 (quoting

                              -5-

United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985)).  We must deny Vaskas's motion if the magistrate judge had a "substantial basis" for finding that probable cause exists.  Id. at 1055.

Vaskas asserts that the warrant in issue was not supported by probable cause because it was stale.  As noted, the interval between the time the government obtained information about Vaskas's alleged subscription to a child pornography website on March 26, 2006 and its application for a search warrant on October 29, 2007 was some nineteen months.  He maintains that, as a result, the evidence seized during the search of his residence in November, 2007 should be suppressed.  He also contends that the statements he made to federal agents during that search should be suppressed because the Fourth Amendment bars the use of statements made by a defendant to law enforcement personnel during an illegal search as "fruit of the poisonous tree."  See Wong Sun v. United States, 371 U.S. 471, 486-88 (1963).

Our Court of Appeals has instructed that the "[a]ge of the information supporting a warrant application is a factor in determining probable cause."  United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993).  It further stated:

> If too old, the information is stale, and probable cause may no longer exist.  Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant.  Rather, we must

> also examine the nature of the crime and the
> type of evidence.

Id. (citations and internal quotations omitted).

In United States v. Vosburgh, a defendant charged with child pornography offenses moved to suppress evidence based on the alleged staleness of the warrant.  602 F.3d 512, 528 (3d Cir. 2010).  There, four months had elapsed between the time when the defendant allegedly attempted to access a website containing child pornography and the time when the government applied for a search warrant.  Id.  Like the application in issue here, the affidavit of probable cause described how technology has facilitated the spread of child pornography.  Id. at 518.  It explained how individuals who view child pornography retain their collections of these materials for long periods of time and how, even if an electronic file containing child pornography is deleted, it often can be recovered through forensic analysis. Id.  The affidavit also set forth information specific to the defendant, including the fact that federal agents had traced back to the defendant an IP address which had attempted to access a website containing child pornography.  Id. at 519.

Our Court of Appeals held that the information contained in the warrant application was not stale.  The court considered the nature of the offense and explained:

> [P]ersons with an interest in child
> pornography tend to hoard their materials and
> retain them for a long time.  Child
> pornography is illegal, and therefore
> difficult and risky to obtain.  Presumably,
> once a child pornography collector gets his

-7-

> hands on such material he will not be quick
> to discard it.

Id. at 528 (citations omitted).  While the court cautioned that

the passage of time is not irrelevant, it recognized that

information concerning child pornography offenses "has a

relatively long shelf life."  Id. at 529.  It stated:

> [W]e think it obvious that the type of
> evidence agents sought from Vosburgh's
> apartment—computers and/or computer
> equipment—is not the type of evidence that
> rapidly dissipates or degrades.  Nor is it
> the type of property that is usually quickly
> or continuously discarded.  Therefore, the
> passage of weeks or months here is less
> important than it might be in a case
> involving more fungible or ephemeral
> evidence, such as small quantities of drugs
> or stolen music.

Id.

The nineteen-month delay here is significantly longer

than the four-month delay at issue in Vosburgh.  However,

Vosburgh cited with approval decisions by other federal appellate

courts which upheld warrants issued up to three years after the

defendant's last alleged criminal activity.  602 F.3d at 529-30

(citing United States v. Morales-Aldahondo, 524 F.3d 115, 119

(1st Cir. 2008); United States v. Irving, 452 F.3d 110, 125 (2d

Cir. 2006)).  Like the federal agent in Vosburgh, Agent Timney

set forth sufficient information in her affidavit in support of

the warrant to suggest that, based on her experience, there was

probable cause to believe that child pornography would still be

found in Vaskas's home in late 2007.

Given the nature of the offense and the evidence in issue, we conclude that the warrant was not stale and that the magistrate judge had a substantial basis for finding that probable cause existed.  Since the warrant was valid, any statements made by Vaskas during the search will not be suppressed as they are not "fruit of the poisonous tree."  See Wong Sun, 371 U.S. at 486-88.

III.

We next turn to the motion of Vaskas to suppress statements made after his arrest on March 29, 2012.  The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend V.  A defendant must be informed of his right to remain silent before police may attempt to initiate custodial interrogation.  See Miranda, 384 U.S. at 467.  A statement made after a Miranda warning is admissible if the defendant waived his right to remain silent and the waiver was voluntary, knowing, and intelligent.  Colorado v. Connelly, 479 U.S. 157, 168 (1986). Miranda, however, does not bar the admission of a defendant's statements if the government can demonstrate that:  (1) the defendant was not in custody; or (2) the defendant was not subject to government interrogation.  Alston v. Redman, 34 F.3d 1237, 1244 (3d Cir. 1994).

Here, the government concedes that Vaskas was in custody at the time that he made statements after his arrest on March 29, 2012.  It asserts instead that his statements were not

-9-

the subject of police interrogation but rather were offered voluntarily by Vaskas.  Thus, the motion turns on the issue of whether Vaskas was subject to police interrogation.

Vaskas maintains that after he invoked his right to remain silent government agents continued to explain that child pornography had been discovered on his computer.  Police interrogation includes both express questioning and its functional equivalent, that is, words or actions which "police should know is reasonably likely to evoke an incriminating response from a suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).  Our Court of Appeals has instructed that an officer's explanation of the basis for an arrest does not constitute interrogation.  United States v. Benton, 996 F.2d 642, 643-44 (3d Cir. 1993).

At the hearing on the motion to suppress, both Agent Smith and Agent Timney testified that Vaskas was reminded that he had invoked his right to remain silent and that therefore police would not discuss the case with him.  Vaskas was being arrested based on a search conducted more than four years earlier.  Under such circumstances, it was reasonable for government agents to inform him briefly of the basis for the arrest in addition to providing him with a copy of the indictment.  There is no evidence that the explanation was "a situation in which a suspect would have felt compelled to respond to the arresting officer's statement." Id. at 644.  Moreover, there was nothing said by the

agents during the car ride to Philadelphia to induce Vaskas to make the statements he did at that time.

IV.

Accordingly, the motion of defendant to suppress under the Fourth Amendment physical evidence and statements stemming from the November 1, 2007 search of his residence will be denied. The motion of defendant to suppress pursuant to the Fifth Amendment statements made after his arrest in March, 2012 will also be denied.